UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOHAMAD CHARAFEDDINE, et al.,

      Plaintiffs,

v.

CARSON FREIGHT, LLC, et al.,

      Defendants.

Case No. 24-cv-11266

Honorable Robert J. White

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 44)**

Plaintiffs Mohamad and Wadad Charafeddine sued Defendants Carson Freight LLC (Carson Freight) and Jesus Odilfo Orduno for damages arising from a car accident involving Mr. Charafeddine and Orduno. (ECF No. 1-2, PageID.9–15). Plaintiffs brought a claim against Carson Freight for negligently entrusting its truck to Orduno. (*Id.* at PageID.11–12). At the crux of that claim is Carson Freight's negligent hiring of and failure to properly monitor, train, and supervise Orduno. (*Id.*). Plaintiffs also seek to hold Carson Freight vicariously liable for Orduno's alleged negligence. (*Id.* at PageID.12–15).

Defendants moved for summary judgment. (ECF No. 44).  The motion is fully briefed. (*Id.*; ECF No. 46; ECF No. 47).  For the reasons stated below, the Court will grant in part and deny in part the motion.[1]

## I.    Background

Mohamad and Wadad Charafeddine are husband and wife. (ECF No. 1-2, PageID.14–15).  On February 9, 2024, Orduno and Mr. Charafeddine got into a car accident while Orduno was driving one of Carson Freight's trucks in the course of his employment. (ECF No. 44-1, PageID.1188, 1221).  Specifically, Orduno rear-ended Mr. Charafeddine's vehicle while Mr. Charafeddine was parked along the side of the road. (ECF No. 44-1, PageID.1203, 1221).  Mr. Charafeddine was also operating a truck at the time of the incident. (ECF No. 44-1, PageID.1140).

Mr. Charafeddine did not report an injury to the responding officer at the scene. (ECF No. 44-1, PageID.1144–45, 1221).  But several days later, Mr. Charafeddine sought medical treatment at Comprehensive Spine and Joint. (*Id.* at PageID.1145).  Mr. Charafeddine then submitted a claim to Northland Insurance Company for his injuries from the accident. (*Id.* at PageID.971).  As relevant to the

---

[1] The Court does not believe oral argument is necessary to resolve the issues in dispute and will decide the motion absent a hearing. *See Himes v. United States*, 645 F.3d 771, 784 (6th Cir. 2011) ("Rule 56 does not require an oral hearing on a motion for summary judgment.") (citation omitted).

Court's analysis, Mr. Charafeddine testified at his deposition that the only relevant injuries are those to his neck and back. (ECF No. 44-1, PageID.1156).

After submitting his insurance claim, Mr. Charafeddine and his wife brought the present action in Michigan state court. (ECF No. 1-2).  Defendants removed the action to federal court.  (ECF No. 1).  Presently before the Court is Defendants' motion for summary judgment. (ECF No. 44).

## II.    Legal Standard

A party may move for summary judgment on any claim or defense. Fed. R. Civ. P. 56(a).  The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*  In analyzing a summary judgment motion, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.* 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).  "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" *Sierra Brokerage*, 712 F.3d at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477

U.S. at 248.  Overall, the court's inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### III.   Analysis

Defendants argued that Plaintiffs offered no evidence of a threshold injury sufficient to survive summary judgment. (ECF No. 44, PageID.935).  In fact, the Court must judicially estop Plaintiffs from claiming that Mr. Charafeddine's injuries from the 2024 accident caused him to lose his business because Mr. Charafeddine asserted the same injuries resulted in the loss of his business in a 2020 bankruptcy case. (*Id.*).  Once the Court forecloses Plaintiffs from relying on that same injury, Plaintiffs no longer have facts to support their claims. (*Id.* at PageID.939–42).  Likewise, there is no material dispute of fact that Mr. Charafeddine did not suffer an objectively manifested impairment of an important body function. (*Id.* at PageID.942–44).  Because Michigan law requires such evidence to prove a threshold injury, the Court must grant summary judgment in favor of Defendants. (*Id.*).

And even if Plaintiffs satisfied the threshold injury requirement, Defendants claimed that Plaintiffs still did not establish a material dispute of fact as to the direct

negligence claim against Carson Freight.[2]  Rather, the facts indisputably show that Carson Freight did not negligently hire, retain, train, or supervise Orduno. Accordingly, summary judgment in favor of Defendants remains the appropriate outcome.

In their response to the summary judgment motion, Plaintiffs argued that the accident seriously impaired Mr. Charafeddine's bodily function such that he had to give up his trucking business. (ECF No. 46, PageID.1395).  Plaintiffs also asked the Court to deny summary judgment on the direct negligence claim because Defendants allegedly refused to allow Plaintiffs to depose Carson Freight employees. (*Id.* at PageID.1397).  Plaintiffs believed these employees had information important to the direct negligence claim, so the Court should not reward Defendants' refusal to cooperate. (*Id.*).

For the reasons explained below, the Court will grant in part and deny in part Defendants' motion.

---

[2] Defendants did not ask the Court to decide whether Orduno acted negligently so as to hold Carson Freight vicariously liable.  As such, the Court will only consider the direct negligence claims against Carson Freight.

### A.   A Material Dispute of Fact Exists as to Whether Plaintiffs Stated a Threshold Injury.

The Court will deny summary judgment on whether the facts demonstrate a threshold injury.  First, the Court cannot judicially estop Plaintiffs from asserting claims that did not exist at the time of the bankruptcy petition.  Second, the parties did not agree as to the nature and extent of Mr. Charafeddine's injuries.  The Court therefore cannot decide whether Mr. Charafeddine suffered a threshold injury as a matter of law.

### 1.   Judicial Estoppel Does Not Apply.

Judicial estoppel is an equitable doctrine invoked by a court at its discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).  The doctrine "applies to a party who has successfully and unequivocally asserted a position in a prior proceeding" and estops them "from asserting an inconsistent position in a subsequent proceeding." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982).  The Supreme Court summarized the doctrine as follows:  "'Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *New Hampshire*, 532 U.S. at 749 (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)) (citation modified).  "The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to

any general formulation of principle." *New Hampshire*, 532 U.S. at 750 (citation omitted) (citation modified). But central to the analysis is "whether the party has succeeded in persuading a court to accept that party's earlier position." *Id.*; *see also Am. Guarantee and Liab. Ins. Co. v. Norfolk S. Ry. Co.*, 278 F. Supp. 3d 1025, 1048 (E.D. Tenn. 2017) ("Judicial estoppel may not be applied unless the previous court accepted the prior inconsistent position.").

Here, Defendants argued that the Court should judicially estop Plaintiffs from claiming Mr. Charafeddine's disc herniations as the threshold injury because he previously claimed disc herniations to discharge bankruptcy debts. (ECF No. 44, PageID.940–42). Mr. Charafeddine filed for bankruptcy in 2020. (ECF No. 44-1, PageID.982). As part of his bankruptcy filing, Mr. Charafeddine swore under oath that he suffered herniated discs in a 2018 car accident[3] and that his injuries caused him to lose his trucking business. (*Id.* at PageID.994, 1029). Defendants claimed that Mr. Charafeddine is now seeking to use the same injuries he suffered in the 2018 accident as the basis for his current lawsuit. (*Id.* at PageID.941–42). According to Defendants, the bankruptcy court discharged Mr. Charafeddine's trucking business debts in part because of Mr. Charafeddine's attestations relating to his injury. (*Id.*).

---

[3] The bankruptcy petition lists the accident as occurring in 2017. (ECF No. 44-1, PageID.994). Plaintiffs clarified that the date on the petition is mistaken and that the accident took place in 2018. (ECF No. 46, PageID.1368).

Given that the bankruptcy court effectively ruled in favor of Mr. Charafeddine by granting his petition, Mr. Charafeddine cannot now claim that the same injuries are the result of his 2024 accident. (*Id.*).

But the Court finds that the discharge of Mr. Charafeddine's bankruptcy does not judicially estop the current claims. "When a separate bankruptcy proceeding is involved, judicial estoppel bars an undisclosed suit when: '(1) the debtor assumed a position contrary to the one she asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the debtor's omission did not result from mistake or inadvertence.'" *Stanley v. FCA US, LLC*, 51 F.4th 215, 219 (6th Cir. 2022) (quoting *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314 (6th Cir. 2013)).

So although a previous bankruptcy proceeding can foreclose later in time, previously undisclosed claims, courts find such foreclosure appropriate only when the claims existed at the time of the bankruptcy petition. *See Davis v. Fiat Chrysler Autos. U.S., LLC*, 747 Fed. App'x 309, 313, 315–16 (6th Cir. 2018) (finding plaintiff had enough information about potential cause of action such that its nondisclosure in her bankruptcy petition judicially estopped later lawsuit); *Bone v. Taco Bell of Am., LLC*, 956 F. Supp. 2d 872, 881–86 (W.D. Tenn. 2013) (judicially estopping lawsuit requesting relief of $500,000 where plaintiff stated under oath in prior bankruptcy proceeding that the same claim was worth $0).

Unlike those cases, the current cause of action did not exist at the time of Mr. Charafeddine's bankruptcy.   Defendants thus cannot fault Mr. Charafeddine for failing to disclose a cause of action he did not have.   Plus, it is plausible that the 2024 accident could have caused new disc herniations or aggravated old injuries to the point that Mr. Charafeddine suffered a serious impairment.   Because the earlier position supposedly endorsed by the bankruptcy court arose from a different accident, the bankruptcy court did not accept the same position for purposes of judicial estoppel.[4]   For the reasons stated, the Court will not judicially estop Plaintiffs from relying on Mr. Charafeddine's disc herniations to support their claims.

### 2.    Whether Mr. Charafeddine Suffered a Threshold Injury Is Not a Question of Law for the Court to Decide.

Michigan law limits tort liability for noneconomic loss caused by a person's "ownership, maintenance, or use of a motor vehicle." Mich. Comp. Laws § 500.3135(1).   To recover, the injured person must have "suffered death, serious impairment of body function, or permanent serious disfigurement." *Id.*   Here,

---

[4] Prior to his bankruptcy filing, Mr. Charafeddine settled a lawsuit related to his 2018 accident. (ECF No. 44-1, PageID.1123).   But since that lawsuit settled, the Court cannot use any position asserted therein as grounds to judicially estop Plaintiffs' current claims. *See Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982) ("If the initial proceeding results in settlement, the position cannot be viewed as having been successfully asserted.").

Plaintiffs alleged that the 2024 accident caused serious impairment to Mr. Charafeddine's body function. (ECF No. 1-2, PageID.14).

To qualify as a "serious impairment of body function," the impairment must be "objectively manifested," impair "an important body function," and "affect[] the injured person's general ability to lead his or her normal life." § 500.3135(5)(a)–(c). Whether the injured person suffered "serious impairment of body function" is a question of law for the court if the court finds either of the following:  (1) "[t]here is no factual dispute concerning the nature and extent of the person's injuries" or (2) "[t]here is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function." § 500.3135(2)(a)(i)–(ii).  But "[i]f there is a material factual dispute regarding the nature and extent of the person's injuries, the court should not decide the issue as a matter of law." *McCormick v. Carrier*, 487 Mich. 180, 193–94 (2010).

Defendants argued that Mr. Charafeddine's post-accident treatment shows no objective manifestation of injury. (ECF No. 44, PageID.943).  In addition, Plaintiffs offered no expert opinion to establish a causal link between the 2024 accident and Mr. Charafeddine's serious impairment. (*Id.*).  Because the facts do not establish that Mr. Charafeddine suffered a threshold injury, the Court should grant summary judgment in favor of Defendants. (*Id.* at PageID.946).

But the Court finds the issue inappropriate for resolution at this juncture given that the parties disputed the nature and extent of Mr. Charafeddine's injuries. Defendants' medical expert Dr. Drouillard[5] compared the MRI images from Mr. Charafeddine's 2018 accident and the 2024 accident and determined that Mr. Charafeddine's disc herniations appeared improved over time. (ECF No. 44-1, PageID.979–80).  Likewise, Dr. Drouillard found no evidence of "any trauma on the MRIs of the lumbar or cervical spine." (*Id.* at PageID.980).  In response, Plaintiffs pointed to the radiology readings and Mr. Charafeddine's medical records as proof of the severity of Mr. Charafeddine's injury. Plaintiffs' evidence includes reports with diagnoses of "traumatic rupture of lumbar intervertebral disc," (ECF No. 46-3, PageID.1453), which contradicts Dr. Drouillard's assessment.

Likewise, the nature and extent of Mr. Charafeddine's injuries materially affects whether he satisfies the threshold injury requirements of (1) objective manifestation and (2) affect on one's ability to live his or her normal life.[6]  First, an

---

[5] Plaintiffs argued the Court should not consider Dr. Drouillard's opinion because Defendants did not submit him as an expert before the discovery deadline passed. (ECF No. 46, PageID.1396–97).  The Court only considers Dr. Drouillard's testimony for the limited purpose of showing that a material dispute of fact exists as to the nature and extent of Mr. Charafeddine's injuries.  The Court intends to take up any outstanding discovery issues separately from the summary judgment motion.

[6] There is no serious dispute "that the spine is an extremely important part of every person's body." *Chouman v. Home Owners Ins. Co.*, 293 Mich. App. 434, 444 (2011).  Thus, the Court need not consider whether the nature and extent of Mr. Charafeddine's spinal injury impaired an "important body function" as part of its analysis.

"objectively manifested" impairment is one "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick*, 487 Mich. at 196. A bulging disc in one's spine observable from an MRI may qualify as an objective manifestation of an impairment. *Chouman*, 293 Mich. App. at 444 (2011). So if Mr. Charafeddine suffered disc herniations independent of his 2018 accident, he may have an objectively manifested impairment. Second, the statute requires the impairment affect "the injured person's general ability to lead his or her normal life." § 500.3135(5)(c). The severity of Mr. Charafeddine's injury would affect his ability to live his life as he normally would. That is, the Court can infer from Dr. Drouillard's assessment better outcomes for Mr. Charafeddine than those presented in Mr. Charafeddine's exhibits. Thus, the Court finds that the nature and extent of Mr. Charafeddine's injury is material to whether he suffered a threshold injury.

Overall, the Court cannot grant the motion as a matter of law as it relates to Plaintiffs' supposed failure to prove a threshold injury. The parties disputed the extent of the injury and presented facts to support their respective positions. The Court finds the nature and extent of the injuries material to whether Plaintiff suffered a serious impairment of bodily function. As a result, the jury must decide whether Mr. Charafeddine suffered a threshold injury. At this stage, the negligence claims,

and any derivative claims, are not subject to dismissal based on a failure to state a threshold injury.

**B.      Carson Freight Did Not Act Negligently in Its Employment of Orduno.**

Defendants argued that Plaintiffs failed to present any evidence of direct negligence against Carson Freight. (ECF No. 44, PageID.944–46).  In the complaint, Plaintiffs alleged that Carson Freight negligently entrusted Orduno to operate its truck despite Orduno being unfit to drive in Michigan by reason of his "inability, inexperience, and consistently negligent driving." (ECF No. 1-2, PageID.11). Because Carson Freight knew or reasonably should have knew that Orduno was unfit to drive, it violated a duty of care owed to Mr. Charafeddine. (*Id.*).  Likewise, Carson Freight negligently failed to have proper training, supervision, testing or other procedures in place to ensure Orduno was reasonably qualified and fit for the operation of the truck. (*Id.* at PageID.11–12).

Employers are subject to liability "for their negligence in hiring, training, and supervising their employees." *Zsigo v. Hurley Med. Ctr.*, 475 Mich. 215, 227 (2006); *see also Muller v. Brannigan Bros. Rests. and Taverns LLC*, 323 Mich. App. 566, 572 (2018) ("negligent hiring, retaining, training, or supervising of an employee can be a direct tort committed by the employer itself").  "To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v.*

*Consumers Power Co.*, 463 Mich. 1, 6 (2000).  "[A] claim of negligent hiring or retention requires actual or constructive knowledge by the employer that would make the *specific* wrongful conduct perpetrated by an employee predictable." *Muller*, 323 Mich. App. at 575.  That is, the employer "bears some responsibility" when it brings an employee "into contact with a member of the public despite knowledge that doing so was likely to end poorly." *Id.* at 574.

Carson Freight's Office Manager Michelle Perales attested that Carson Freight has "established comprehensive hiring procedures to ensure that all drivers meet the necessary qualifications and standards of the Federal Motor Carrier Safety Administration Compliance (FMCSA) and the State of Texas Department of Motor Vehicles (TxDMV).[7] (ECF No. 44-1, PageID.1159).  In addition, Orduno passed Carson Freight's safety certifications. (*Id.* at PageID.1160).  Prior to and since his hiring, Orduno had no criminal convictions or significant driving history that would have prevented his hiring. (*Id.* at PageID.1160).  In fact, Orduno had thirty-five years of experience driving a semi-truck with a "good driving record." (*Id.*).  Josue Alonso, the United States Department of Transportation Safety Director in charge of FMCSA for Carson Freight, also submitted a declaration on behalf of Defendants. (*Id.* at PageID.1163–65).  In his role, Alonso determines driver qualifications; after

---

[7] Carson Freight has its principal place of business and headquarters in Texas. (ECF No. 5, PageID.45).

reviewing Orduno's application, Alonso determined that Orduno had no accident or traffic conviction records and was never denied a license to operate a motor vehicle. (*Id.* at PageID.1164).  Based on this information, the Court finds that Defendant had no reason to believe Orduno posed a danger to the public.

Plaintiff presented no evidence to rebut the facts above.  Plaintiffs only responded that Defendants "should not be rewarded with summary judgment" on the direct negligence claim because they cancelled the depositions of Carson Freight employees Michelle Perales and Josue Alonso. (ECF No. 46, PageID.1397).  But that statement does not provide the full context. Defendants offered Plaintiffs' counsel dates to depose Perales and Alonso; Plaintiffs' counsel did not respond in a timely manner resulting in conflicts with the proposed dates; Defendants offered to stipulate to extend discovery to allow the requested depositions; and Plaintiffs' counsel declined and opposed Defendants' subsequent motion to extend the deadline. (ECF No. 34-1, PageID.312; ECF No. 36, PageID.395; ECF No. 47, PageID.1542).  Additionally, at no point during the discovery period did Plaintiffs' counsel move to compel the depositions of Perales and Alonso.  Given that Plaintiffs did not raise any factual dispute with the sworn affidavits, the Court will grant summary judgment on Plaintiffs' direct negligence claim for Defendants.  There is no material dispute of fact that Defendants did not negligently hire and retain Orduno.

15

The Court will also grant summary judgment on the negligent training and supervision aspect of Plaintiffs' direct negligence claim.  In her affidavit, Perales noted that Carson Freight installed monitoring devices in its vehicles, including the vehicle that Orduno drove. (ECF No. 44-1, PageID.1161).  Orduno needed to pass a road test, an English exam, and a pre-trip inspection and hours of service questionnaire to drive for Carson Freight. (*Id.* at PageID.1161, 1165).  Orduno completed all satisfactorily. (*Id.*).  Carson Freight also routinely monitored its driver routes. (*Id.* at PageID.1161).  Again, Plaintiff submitted no competing facts. As a result, the Court finds that no material dispute of fact exists that Carson Freight sufficiently supervised and trained its employees, including Orduno.  The Court's ruling does not affect Plaintiffs' vicarious liability claim based on Orduno's alleged negligence on the day of the accident.

* * *

For the reasons given, the Court **ORDERS** that the motion for summary judgment (ECF No. 44) is **GRANTED IN PART AND DENIED IN PART**.

Dated: March 10, 2026                          s/Robert J. White
                                               Robert J. White
                                               United States District Judge

16